COBB et al. v. CRITTENDEN.

(Circuit Court of Appeals, Third Circuit. May 7, 1908.)

No. 7.

1. CONTRACTS—ILLEGALITY—DEFENSES.

Where plaintiff tendered certain railroad bonds for delivery under a contract of sale, and defendant refused to receive the bonds, on the ground that plaintiff had obtained them under a void contract with the railroad company, such contract being void in fact, plaintiff could not recover for defendant's refusal to receive the bonds, plaintiff, in order to make a foundation for his suit, being forced to establish an unlawful contract, which the courts would not enforce.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 681, 682.]

2. SUBROGATION—SCOPE OF REMEDY—LIEN.

A railroad company having become indebted on certain notes, bonds to the amount of $60,000 were placed in the hands of C., as trustee, to secure the payment of the notes. Thereafter C. paid the indebtedness, took up the notes, and afterwards, on the foreclosure of the mortgage, received the pro rata of $19,000, leaving a balance of $12,000 still due. Held, that C. by paying the notes became subrogated to the rights of the creditors against the bonds, on which he had a valid lien for the balance of the debt until payment; and hence the bonds, while subject to such lien, were not deliverable to C. and another under contract for the sale of the bonds of the railway company by the owner.

In Error to the Circuit Court of the United States for the Middle District of Pennsylvania.

Thos. H. Murray, Jas. P. O'Laughlin, Hazard Alex. Murray, Willis I. Lewis, Archibald F. Jones, and Robert R. Lewis, for plaintiffs in error.

W. K. Swetland and A. S. Heck, for defendant in error.

Before DALLAS, GRAY, and BUFFINGTON, Circuit Judges.

BUFFINGTON, Circuit Judge. In the court below (156 Fed. 535), Crittenden, the defendant in error, brought suit against William and Theodore Cobb, to recover on a contract between them, which, after arranging for the sale of certain stocks of the same road by Crittenden to the Cobbs, provided for the sale of certain bonds thereof as follows:

"Said Crittenden further sells and assigns to the said Theodore and William Cobb all of the bonds owned by him, issued by the New York & Pennsylvania Railroad Company to Franklin D. Sherwood and Fred C. Leonard, as trustees. It is impossible to describe in this contract the bonds owned by said Crittenden, for the reason that some of them are undivided bonds, but it is the intention of this agreement that Crittenden shall sell all that he owns whether divided or undivided, but this contract shall apply only to

the bonds now owned by Crittenden, and he shall not have the right under its terms to acquire other bonds and seek to deliver them to the Cobbs under the provisions of this contract."

A number of bonds so stipulated for were taken and paid for by the Cobbs, and this suit was brought to recover the stipulated price of 75 cents on the dollar, viz., $26,700, for $35,000 of additional bonds, liability to take which the Cobbs denied. On the trial the jury found a verdict of some $11,000 for the plaintiff. Judgment having been entered thereon, defendants brought this writ of error.

There are three principal questions under the assignments of error, the first of which concerns the plaintiff's right to recover for the price of a proportionate part of $58,400 bonds paid by the railroad for the construction of its Millport Extension. The contention of Crittenden is that he and the defendants entered into an agreement, whereby Theodore Cobb was to take a construction contract from the railroad for the construction of the Millport Extension, for which Cobb was to receive in part payment, the foregoing bonds; that plaintiff was interested in said contract, and was to receive part of said bonds; that Cobb took the contract, built the road, and received the bonds from the railroad; that he never accounted for them, but had them in his hands. Crittenden claimed these bonds were covered by the contract in suit, and thereby Theodore and William Cobb purchased them at 75 cents on the dollar. The defendants denied Crittenden had any interest in the contract, and that. if he had, being a director of the road, the contract was illegal and void. That such contract is illegal and void is conceded; but the court held that fact was not material, as this suit was not brought to enforce the contract, but to recover the fruit of it. Its position is best explained by its own words in the opinion refusing a new trial:

"The remaining controversy was over the bonds received for the building of the Millport Extension, some $58,400. The contract with the company for building this road was taken by Theodore Cobb, as the other had been by J. B. Rumsey, but the plaintiff claimed an interest by virtue of an arrangement, proposed, as he testified, by the defendants, by which he, they, Rumsey, McConnell, and Richardson were to participate, each to put up $5,000 to cover the cost, which was estimated at $30,000. McConnell and Richardson admittedly never went in, and Rumsey dropped out soon after the work started. But the others went on, according to plaintiff, he superintending the construction, and doing practically all that was done by any one in that direction, the defendants furnishing the money, including his share, which he had arranged to raise, but was excused by them from doing. All this, of course, was denied, but the jury have accepted it, and it is therefore to be taken as true. * * * It is objected that Crittenden was a director in the road, as were the others, the defendants, with the rest, and was therefore prohibited by both Constitution and statute from having any interest in its construction. Const. Pa. art. 17, § 6; Act May 15, 1874 (P. L. 178). But we have passed the point where that would be material. Suit is not brought on the asserted arrangement between the parties, with regard to building the road, to recover a share of the profits, nor yet for the bonds representing this, but for the price of the bonds, which simply accrued to the plaintiff out of it, which the defendants agreed to buy. It is the same as if, the transaction having been completed, and the stock and bonds coming to the plaintiff having been turned over to him, the defendants had offered him a certain sum for them, which he had agreed to take. It would be no answer in that case,

to an action by the plaintiff on the sale, that the bonds came from a tainted source, or that he became entitled to them in an unlawful way. Nor is this changed by the fact that at the time of the bargain, as well as of suit brought, the bonds were in the defendants' hands. It is true that, in consequence of this, the prohibited arrangement has to be resorted to, to establish and determine the plaintiff's interest, and that, except for it, he would have none. But as already stated, the thing trafficked in and now sought to be enforced is not the gains coming to him out of it, but the bonds into which they had ripened, or rather the price of them, which the defendants agreed to pay. Suppose, to put it in another way, the defendants had said: 'You have so many bonds due you from the building of the Millport Extension, for which we will give you so much,' and the plaintiff had accepted the offer. Can there be any question but that the defendants would be bound?"

In the view indicated by this extract from the opinion of the court below we cannot concur. Theodore Cobb's contract was a lawful one. With Crittenden's interest therein it was an unlawful one. Cobb stood on the legality of his contract, and denied Crittenden's right to participate therein and to recover thereby in this case. To recover Crittenden was therefore forced to establish an unlawful contract, and to make the foundation of his suit that which statute law and public policy forbade. This brought his case within the ban of McMullen v. Hoffman, 174 U. S. 639, 19 Sup. Ct. 839, 43 L. Ed. 1117, wherein it was said:

"In case any action is brought in which it is necessary to prove the illegal contract in order to maintain the action, courts will not enforce it, nor will they enforce any alleged rights directly springing from such contract."

It is therefore apparent the court erred in denying defendants' point that:

"Under the pleadings and evidence there can be no recovery by the plaintiff on account of the $58,400 of bonds issued for the extension of the road to Millport."

So also was there error in permitting a recovery by Crittenden of any portion of the $60,000 of bonds which Theodore Cobb held as trustee. By a paper of January 16, 1897, signed, inter alia, by Crittenden, the Cobbs, and others not parties to this suit, that in consideration of certain outstanding bills, payable of J. B. Rumsey, in the shape of notes in certain banks, aggregating $32,100, and on which the signers were liable as indorsers, accommodation makers, or in other ways, it was agreed that said $60,000 of bonds were "to be placed in the hands of Theodore Cobb, as trustee, as security for the payment of the above indebtedness, said bonds to be negotiated by the said Theodore Cobb, if necessary, when authorized by the undersigned, or by a majority of the undersigned." Subsequently, Cobb paid off all of said indebtedness, and holds the notes. On foreclosure, by the trustee, of the mortgage given to secure these bonds Cobb collected the pro rata of some $19,000 awarded these bonds, but has not been reimbursed for any part of the $12,000 balance. No settlement, accounting, or adjustment between the signers of said paper has been made, or the several amounts due by each ascertained. The trustee, by the terms of the trust, was bound to apply such amount to the bills payable, and in relief of the sureties;

and, having paid the debts himself, he had a right to be subrogated to the rights of the nonpaying sureties. The remedy of subrogation is no longer limited to sureties and quasi sureties, but includes so wide a range of subjects that it has been called the "mode which equity adopts to compel the ultimate payment of a debt by any one who in justice, equity, and good conscience ought to pay it." Harris on Subrogation, § 1.

It is therefore clear that under such circumstances Crittenden had no right to recover the bonds from Theodore Cobb, or to recover the price thereof from William and Theodore, and that the defendants' fifth point, viz. :

"The payment of Theodore Cobb, shortly after January 5, 1900, of the notes for which the $60,000 of bonds had been pledged under the agreement of January 26, 1897, as modified by that of September 8, 1898, did not release the bonds from the pledge. He, being trustee at the time of the payment, and holding the bonds as trustee, would be entitled to the benefit of the bonds as security for the money so paid by him until reimbursed by payment to him; and, never having been so reimbursed, there can be no recovery in this action against the defendants on account of those bonds"—should have been affirmed.

This view of the case renders a reversal imperative, and in awarding a venire we express no opinion on the question whether the plaintiff can maintain an action at law for the third element which went to make up the verdict.